(83 South. 362)

No. 23476.

FERRAND et ux. v. W. H. COOK & CO. et al.

(Nov. 3, 1919. Rehearing Denied Dec. 1, 1919.)

*(Syllabus by Editorial Staff.)*

1. MUNICIPAL CORPORATIONS ⬤⟿705(3)—NEG-LIGENCE OF DRIVER OF MOTORCAR AS TO BOY RUNNING BY CAR.

The failure of the driver of a motorcar to slacken speed or give warning of the presence of the car to a small boy, who was racing close beside it after picking up something in the street, must be deemed negligence.

2. MUNICIPAL CORPORATIONS ⬤⟿705(10)—ACT OF BOY IN RACING IN FRONT OF MOTOR VEHI-CLE CONTRIBUTORY NEGLIGENCE.

For a small boy, after picking up a stick in the street, to attempt to cross directly in front of a car with which he had been racing, is contributory negligence, where the boy was aware of the presence of the vehicle.

3. MUNICIPAL CORPORATIONS ⬤⟿706(5)—EVI-DENCE SHOWING BOY KNEW OF PRESENCE OF AUTOMOBILE.

In an action for the death of a small boy, who was struck by a motorcar when he attempted to cross in front of the same, evidence *held* to warrant finding that the boy knew of the presence of the vehicle.

4. NEGLIGENCE ⬤⟿85(3)—CONTRIBUTORY NEG-LIGENCE.

A lad of 11½ years, of average intelligence, has sufficient powers of discretion to be guilty of contributory negligence in attempting to cross directly in front of a rapidly moving motorcar with which he had been racing.

Appeal from Fourth Judicial District Court, Parish of Lincoln; J. B. Crow, Judge.

Action by S. O. Ferrand and wife against W. H. Cook & Co. and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

John B. Holstead, of Ruston, for appellants.

Friederichs, Moise, Barksdale & Barksdale, of New Orleans, for appellees.

DAWKINS, J. This is an action by the father and mother, S. O. Ferrand and wife, against the defendants for the death of a minor son, Sam Ferrand, alleged to have been caused through fault and negligence of one Charles Beardon, while employed by and engaged in the business of the defendants.

The answer admits the death of the child, denies the negligence, and pleads contributory negligence on the part of the deceased.

The demand was for $5,000 on behalf of each of the plaintiffs, and the further sum of $453.50 for sanitarium fees, doctor's bills, etc., incurred in an effort to save the life of their son.

The case was tried before the judge below without a jury, and submitted upon a note of evidence taken upon a preliminary trial of the said Charles Beardon for manslaughter, under a charge preferred by the father a few days after the death of the child. The father having died before the trial of the present case, his heirs were made parties plaintiff to the extent only of the demand for reimbursement of the expenses incurred as above indicated. There was judgment for the defendant below, and the plaintiffs have appealed.

The record is short, and the facts disclosed thereby are as follows:

E. H. Fisher, superintendent of public schools for Bienville parish, residing at Arcadia, La., drove a new Paige car from that town to Ruston, La., and, the engine having become very hot, took it into the garage of the defendants, at the latter place, to have the trouble remedied. Beardon was a young mechanic, about 20 years of age, employed by Cook & Co., and to whose lot fell the duty of adjusting the car. Being unable to locate the trouble in the shop, he decided to drive it around the streets a while, in order to better determine what was wrong. He and Fisher got in the car, and drove south over the street on which the garage was located a distance of two or three blocks, to the crest of a hill, and then turned east at

right angles on Arizona avenue, a street some 60 feet in width; thence east a distance of some three or four blocks, at a speed of 12 to 15 miles per hour, and on reaching Bonner street, which crosses Arizona avenue at right angles, Fisher noticed some small boys or children standing under some trees on the right and south side of the avenue on which they were traveling. About the same time, deceased, who was a youth about 11½ years of age, ran across the street ahead of the car from the south to the north side, and stooped down as if picking up some object. By this time the car had gotten nearly even with him, and he (the deceased) straightened up and ran along ahead of the car on the north side of the street, at a distance of from 4 to 8 feet from the path of the automobile, and some few feet in advance of it. According to Fisher, he continued to run along in this manner for about 100 feet, at the same time looking back over his shoulder in the direction of the car, as if racing with it, and then suddenly turned to the right and south, and dashed in front of the machine only a few feet ahead of it, and was struck by the right fender and knocked down on the south side of the street. The speed of the car was not slackened during the race, but as soon as the child turned to go in front of it Beardon threw on the brakes, and the wheels dragged for some distance. Beardon did not see any of the children, except the deceased, and then only about the time he was stooping to pick up something from the street. From that point on, Beardon's testimony was, in substance, the same as that of Fisher. The block was approximately 300 feet long, and when first seen by Fisher the children were some distance east of the middle of it, as was the point at which deceased first crossed over to the north side of the avenue. Fisher was seated on the right or south side and Beardon on the left or driver's side, of the car, and the fact that the latter's attention was probably directed to the performance of the automobile no doubt accounts for his failure to see the other children and the deceased sooner than he did. Both witnesses say they thought young Ferrand was racing with the car, and had no idea that he would run in front of it, in view of the fact that he was looking back at them. When the car struck the boy, Beardon became hysterical and commenced to cry, but managed to drive it on across the next street, and Fisher made an effort to reach a doctor by telephone from the house on the next corner, but, being unable to do so, he and Beardon got in the car and drove back to the business section of the town for that purpose. They reached the drug store about the time the doctor was leaving for the scene of the accident, and returned with him.

Young Ferrand was taken to Monroe, La., on the first train, where he lingered from the 14th to the 19th of June, without regaining consciousness, and on the latter date died as the result of his injuries.

At the time of the collision, deceased, together with a number of other small boys about his age, were engaged in playing a game called "board down," played somewhat similarly to "hide and seek," except that, instead of the one who is to do the finding hiding his face and counting at the base while the others hide, he is required to throw a board or stick as far as he can, then retrieve it, and put it against the base, before beginning to search for those who have hidden. It having fallen to his lot to do the hunting, just a few moments before the collision, he had thrown the stick or board across the street, his playmates had dispersed to hide, he had run across the street to get the stick, and was doubtless returning to place it against the base when struck by the automobile. It is entirely possible that his mind was concentrated on the game, like that of Beardon on the car, and that he did not pay attention to

it as he should have done, or he may have thought that he could get across before it reached him.

The only other person who witnessed any of the circumstances immediately preceding the collision, besides Fisher and Beardon, was an old negro washerwoman, on her way to deliver her week's wash, who had stopped on the south side of Arizona avenue, at the crossing of Bonner street, to permit the automobile in question to pass. She saw the children on the south side of the street as stated by Fisher, saw the deceased run across the street, and pick up something, and says:

"He was running along by the side of it (meaning the car) for a while, and I reckon the dust hid him from me."

All of the other witnesses appeared on the scene within a few moments after the accident, and the fact is undisputed that young Ferrand was picked up on the south side of the street, with a wound on the right side of his head.

Thus the statements of Beardon and Fisher are in some measure corroborated by the other witnesses.

Beardon died during the epidemic of influenza in the fall of 1918.

### Opinion.

[1-3] We cannot concede that Beardon was free from fault. Any prudent man, it would seem, with a small boy racing along in the street as close as deceased was to the car in question, would have checked its speed, blown his horn, and taken such other measures as were reasonably necessary to warn the child and to have him desist from his reckless conduct. However, if the deceased did look back and was conscious of the presence of the car, as Fisher and Beardon say he was, and then knowingly dashed in front of it, he was undoubtedly also guilty of the grossest negligence, which continued down to the moment of the collision. In our opinion, the case turns upon a very important question of fact, and that is as to whether the deceased did look back and was aware of the presence of the automobile; for, if his position and conduct were such that it was apparent to the driver of the car that the child was oblivious to his surroundings, then it was the driver's duty to check its speed and blow his horn to warn the youth, and the failure to do so would, in our opinion, amount to wanton negligence.

The lower court heard and saw the witnesses, and should have been better able to judge of their truthfulness than we are. There is nothing in the record to dispute them, except the circumstance of the child turning and running suddenly in front of the car, and, taken all in all, we can hardly permit this to outweigh the other positive evidence in the case, some of which is corroborated by other witnesses and circumstances.

We must conclude, therefore, that the deceased was guilty of contributory negligence, which continued down to the moment of the accident, and which bars plaintiffs' recovery, notwithstanding the negligence of the defendants' agent.

[4] A lad 11½ years old, of average intelligence, has sufficient powers of discretion to render him guilty of contributory negligence under the circumstances of the present case. O'Rourke v. N. O. City & L. Ry. Co., 51 La. Ann. 755, 25 South. 323; Lynch v. Knoop, 118 La. 618, 43 South. 252, 8 L. R. A. (N. S.) 480, 118 Am. St. Rep. 391, 10 Ann. Cas. 807; Cusimano v. City of N. O., 123 La. 565, 49 South. 195.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the plaintiffs.